UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARCUS HUGHES,

                Plaintiff,                              Hon. Ellen S. Carmody

v.                                             Case No. 1:13-CV-1065

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____/

**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act.  On December 9, 2013, the parties agreed to proceed in this Court

for all further proceedings, including an order of final judgment.  (Dkt. #14).

        Section 405(g) limits the Court to a review of the administrative record and provides

that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The

Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons

stated below, the Court concludes that the Commissioner's decision is not supported by substantial

evidence.  Accordingly, the Commissioner's decision is **reversed and this matter remanded for**

**further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 35 years of age on his alleged disability onset date.  (Tr. 27, 198).  He successfully completed high school and worked previously as a computer numerical controlled (CNC) operator.  (Tr. 27, 49).  Plaintiff applied for benefits on February 3, 2010, alleging that he had been disabled since September 17, 2009, due to a brain injury and left shoulder pain.  (Tr. 198-203, 282).  Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 67-197).  On May 6, 2011, and November 2, 2011, Plaintiff appeared before ALJ Mario Silva, with testimony being presented by Plaintiff, a medical expert, and a vocational expert.  (Tr. 35-66).  In a written decision dated November 23, 2011, the ALJ determined that Plaintiff was not disabled.  (Tr. 16-28).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-3).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

3

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) left shoulder bicep tendonitis; (2) status-post cerebral injury with diminished memory; and (3) mood disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 19-21).

The ALJ next determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he has no limitations regarding sitting and/or standing other than he is limited to working 8 hours daily with normal breaks; (3) he is limited to occasional overhead lifting and occasional pushing/pulling with his dominant, left upper extremity; (4) he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; (5) he can occasionally balance, stoop, kneel, crouch, or crawl; (6) he must avoid even moderate exposure to dangerous moving machinery and unprotected heights; (7) he is limited to jobs that do not require driving; (8) he is limited to simple, routine, and repetitive tasks; (9) he cannot perform work that would require directing others, abstract thought or planning; (10) he can perform work involving only simple work-related decisions; (11) he can handle only routine workplace changes; (12) he must be able to work at a flexible pace with no fast-paced production requirements or tandem tasks; and (13) he would need one-to-one supervision during the learnging/training phase.  (Tr. 22).

The ALJ found that Plaintiff could not perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a

significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert at the administrative hearing.

The vocational expert testified that there existed in the Michigan/Indiana area approximately 6,400 jobs, as well as approximately 690,000 jobs nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 56-65). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **Plaintiff's Credibility**

Through his testimony at the administrative hearing, as well as function reports submitted to the Commissioner, Plaintiff asserts that he experiences far greater limitations than the ALJ recognized. The ALJ afforded little weight to Plaintiff's subjective allegations. Plaintiff argues

6

that he is entitled to relief because the ALJ's rationale for discrediting his credibility is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ identified three categories of evidence which he asserted supported his decision to discredit Plaintiff's credibility: (1) Plaintiff's daily activities; (2) Plaintiff's course of treatment; and (3) Plaintiff's work history. (Tr. 24-25). An examination of these rationales, however, reveals that the ALJ's decision to discount Plaintiff's subjective allegations is not supported by substantial evidence.

1.      Plaintiff's Daily Activities

With respect to Plaintiff's daily activities, the ALJ observed the following:

> the claimant's housing coordinator stated in the Third Party Function
> Report that he took care of a sick friend, including driving her to
> doctors' appointments.  The housing coordinator also included that
> the claimant did the laundry and light household cleaning, including
> dishes and vacuuming.  The house coordinator further stated that the
> claimant spent time with his friends around 1-2 times a week when
> they took him to appointments (Exhibit B5E).  The claimant stated
> that he shopped for food and would sometimes cook his own meals
> (Exhibit B4E).  The claimant also indicated to Dr. Kitchen that he
> took care of his own personal needs (Exhibit B18F/9-12).

(Tr. 24-25).

On March 15, 2010, Lean Miller, Plaintiff's housing coordinator, completed the function report on which the ALJ places such great reliance.  (Tr. 258-65).  Miller did note that Plaintiff "helps a friend who is ill [and] will take her to doctor appointments." (Tr. 259).  The Court fails to discern, however, how this observation contradicts any of Plaintiff's subjective allegations.  Plaintiff has not alleged that he is home-bound or lives in a vegetive state.  Rather, Plaintiff alleges that as a result of his brain injury he experiences symptoms and limitations which preclude him from performing substantial gainful activity on a regular basis.  That he is occasionally able to accompany a friend to a doctor's appointment hardly conflicts with such.

Miller also noted that Plaintiff "is able to do laundry [and] light household cleaning (ie dishes, vacuuming & cleaning the apartments)." (Tr. 260).  The ALJ, however, ignored Miller's further comments that Plaintiff "does the above chores about once a month" and, moreover, that "it will take him 2-3 days to do laundry, the dishes or clean the bathroom because he will get distracted and start something else." (Tr. 260).  Miller further observed that Plaintiff "needs reminders for cleaning and encouragement." (Tr. 260).  Again, the Court fails to discern, and the ALJ fails to

describe, how Miller's observations regarding Plaintiff's performance of household chores is inconsistent with Plaintiff's subjective allegations.

Miller did report that Plaintiff "does spend time with others. . .one-two times per week." (Tr. 262). Miller noted, however, that this was only in conjunction with Plaintiff's doctor's appointments. (Tr. 262). Miller further observed that such accompaniment was necessary because "due to the brain injury [Plaintiff] has difficult[y] with his memory. For example he could remember he has an app[ointment] and get ready for the app[ointment] but leave the house and forget where he was going." (Tr. 263). The ALJ made no mention of this latter observation. Thus, Miller's observation regarding the time Plaintiff "spends with his friends" is, again, hardly inconsistent with Plaintiff's subjective allegations. The Court further notes that Miller's remaining observations concerning Plaintiff's impairment and symptomatology are not inconsistent with Plaintiff's subjective allegations. (Tr. 258-65).

With respect to Plaintiff's description of his activities, the ALJ is correct that Plaintiff reported that he "shopped for food and would sometimes cook his own meals." (Tr. 25, 248-49). A closer examination, however, of what Plaintiff reported indicates that Plaintiff's revelations are far less significant than the ALJ concluded. While Plaintiff did report that he shops for food, he reported that he performed this activity "once a month" and that it "takes 3 hours" for him to complete his shopping. (Tr. 248). As for his cooking prowess, Plaintiff reported that he prepares "frozen dinners, hot dogs, [and] sandwiches. . .2-3 times a week if that." (Tr. 249). Plaintiff further reported that it takes him "35 minutes to one hour" to prepare such meals. (Tr. 249). Again, the Court fails to discern, and the ALJ fails to explain, how Plaintiff's plodding performance of such limited activities calls into question his credibility.

10

Finally, while Plaintiff did report to Dr. Kitchen that he "cares for his personal hygiene adequately," (Tr. 715), such simply does not call into question the credibility of Plaintiff's subjective allegations. Moreover, a review of Dr. Kitchen's complete report, if anything, lends credence to Plaintiff's allegations. (Tr. 707-17).

2.      Plaintiff's Course of Treatment

In discounting Plaintiff's credibility, the ALJ next cited to Plaintiff's course of treatment, specifically concluding as follows:

> As for the course of treatment, the claimant has continued to seek regular treatment from Dr. Sajja but has not really consistently sought treatment for his physical conditions since September 17, 2009. Moreover, the claimant has shown some improvement in his mood issues in the last couple of visits (Exhibit B27F/1-2, 5-6). However, the claimant has also indicated on several different occasions that he had not taken his medication because of being [in] prison or failure to complete the proper paperwork (Exhibits B16F/4, B27F/5-6). Dr. Saaja further found that the claimant tended to lie and that his behavior/mood did not correspond with someone who suffered from a brain injury (Exhibits B16F/4, B27F/5-7). In addition, Dr. Kitchen indicated that the claimant was attentive throughout the examination; and could recall two out of three objects after three minutes (Exhibit B18F/9-12). Dr. Shaver also noted that the claimant had a full-scale IQ score of 88, which placed him in the average range of intellectual functioning (Exhibit B23F).

(Tr. 25).

While Dr. Sajja may have noted "some improvement" in Plaintiff's mood, such observation overlooks that the record fails to suggest that Plaintiff has experienced similar improvement with respect to his brain injury and subsequent cognitive impairments. (Tr. 568-73, 630, 688-96, 706-17, 769-75, 788-807). As for the ALJ's observation that Dr. Sajja believed that

11

Plaintiff "tended to lie," a review of the doctor's comments suggests a different interpretation than that posited by the ALJ.

On December 29, 2009, Plaintiff met with Dr. Sajja. (Tr. 691). Plaintiff reported that he had "just gotten out of jail" and had "no medication." (Tr. 691). With respect to Plaintiff's explanation about this particular incident, the doctor reported that, "[a]s usual, [Plaintiff] gives a lengthy story about things which does not quite add up. He seems to get caught in his own lies it seems and he is not able to find a way to contain his life from spinning out of control." (Tr. 691). While the ALJ implies that Plaintiff was exhibiting dishonesty so as to embellish his condition, Dr. Sajja's comments suggest the possibility that Plaintiff experiences difficulty with honesty *as a result of* his impairment. This conclusion is underscored by the fact that Dr. Sajja rated Plaintiff's GAF score as 30 which indicates that Plaintiff's "behavior [was] considerably influenced by delusions or hallucinations" or that he was experiencing "serious impairment in communication or judgment" or "inability to function in almost all areas." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000).

The ALJ's comment that Dr. Sajja reported that Plaintiff's "behavior/mood did not correspond with someone who suffered from a brain injury" is likewise much less significant than the ALJ suggests. On May 28, 2010, Dr. Sajja reported that:

> Marcus as usual is very wishy washy about what information he will provide and never really elaborate[s] on anything. I remain very suspicious as to his activities and the information that he provides. He has a closed head injury and that could give some problems with mood, but his behavior is completely different than that. His evasiveness, his paranoia, his behavior of hiding issues that he really does not need to. He uses the excuse he cannot remember at times but today that was not the case, he just did not want to answer.

(Tr. 794).

12

First, the doctor failed to identify the information Plaintiff was allegedly "hiding" or the questions that Plaintiff "did not want to answer." It seems difficult to draw concrete conclusions in the absence of such information. Moreover, as discussed immediately above, the doctor's observations can just as easily be interpreted as supporting Plaintiff's subjective allegations rather than discrediting such.

As for Dr. Kitchen's observations, as also noted above, a review of Dr. Kitchen's complete report, if anything, lends credence to Plaintiff's allegations. As for Dr. Shaver's conclusion that Plaintiff possessed average intelligence, such is hardly inconsistent with Plaintiff's subjective allegations or the conclusion that he suffers from a brain injury which imposes significant limitations. Moreover, Dr. Shaver's entire report, like Dr. Kitchen's report, simply fails to support the ALJ's reasoning.

### 3.    Plaintiff's Work History

Finally, the ALJ pointed to Plaintiff's work history as support for his decision to diminish his credibility. Specifically, the ALJ stated:

> As for work history, the claimant stated to Dr. Sajja that he tried to return to work but was fired for falling asleep on the job. Dr. Sajja then noted that the claimant tended to stay awake until 3am, which likely attributed to the incident (Exhibit B27F/1-2). The claimant has also received unemployment benefits. In receiving such benefits, the claimant had to state that he is "read[y], willing, and able to work (Hearing Testimony)."

(Tr. 25).

On March 18, 2011, Plaintiff reported that he attempted to return to work recently, but was fired after he "fell asleep on the job." (Tr. 788). In response, Dr. Sajja observed that

13

Plaintiff "apparently stays up until 3:00 a.m. and sleeps later on, which probably was the reason he was falling asleep on the job." (Tr. 788). The ALJ interprets this as impugning Plaintiff's credibility, the implication being that Plaintiff was staying up late partying or engaging in some other unproductive behavior. The medical evidence, however, suggests something far less sinister. Dr. Shaver, a specialist in Neuropsychology and Brain Retraining, noted that Plaintiff's injury results in "problems sleeping." (Tr. 772). This is consistent with Leah Miller's observation that Plaintiff experiences difficulty sleeping. (Tr. 259). Furthermore, the Court is confused why Plaintiff's attempt to return to work is characterized as diminishing his credibility. *See White v. Commissioner of Social Security*, 312 Fed. Appx. 779, 789 (6th Cir., Feb. 24, 2009) (claimant's "attempts to continue working despite his disability support his credibility").

Plaintiff acknowledged at the administrative hearing that he received unemployment compensation following his unsuccessful work attempt described above, something the ALJ found significant. (Tr. 25, 40-41, 48-49). The Court recognizes the apparent contradiction between a claimant seeking disability benefits while simultaneously receiving unemployment compensation. *See, e.g., Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801-02 (6th Cir., July 29, 2000). Nevertheless, such cannot be permitted to assume more significance than is warranted, a position echoed by the Social Security Administration. In August 2010, Frank A. Cristaudo, the Chief Administrative Law Judge for the Social Security Administration authored a memorandum instructing ALJ's that "the receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled." *Webster v. Colvin*, 2014 WL 4095341 at *9 (E.D. Tenn., Aug. 19, 2014). As Chief ALJ Cristaudo explained, "because the

disability decisionmaking process is uncertain and quite lengthy, a claimant should not be forced to choose between applying for unemployment and disability benefits." *Id.* Considering the current backlog at the Social Security Administration, recently found to be in excess of one million cases, this seems like a reasonable observation. *See* Breaking Points: An Update, The Backlog Got Bigger, available at http://www.washingtonpost.com/wp-srv/special/national/breaking-points/#backlog (last visited on March 23, 2015). In sum, the Court finds that the ALJ's rationale for discounting Plaintiff's credibility is not supported by substantial evidence.

**II.        Dr. Sajja's Opinions**

On April 7, 2011, Plaintiff's longtime treating psychiatrist, Dr. Sajja, completed a report concerning Plaintiff's mental residual functional capacity. (Tr. 803-07). The doctor assessed Plaintiff's abilities in 25 different areas of functioning. (Tr. 805-06). Dr. Sajja characterized Plaintiff as "unable to meet competitive standards" in 14 categories, "seriously limited, but not precluded" in 10 categories, and "limited but satisfactory" in 1 category. (Tr. 805-06). The ALJ afforded "little weight" to Dr. Sajja's opinions. Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting Dr. Sajja's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v.*

15

*Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ supported his decision to discount Dr. Sajja's opinions on several grounds. First, the ALJ stated that "Dr. Sajja further noted that the claimant tended to lie and that his behavior/mood did not correspond with someone who suffered from a brain injury." (Tr. 26). As discussed above, Dr. Sajja's observation in this regard does not necessarily support the ALJ's position. The ALJ also relied on the function report completed by Leah Miller. As discussed above, however, this report actually supports Dr. Sajja's opinions. The ALJ further observed that Plaintiff "experienced no side effects from his medication." (Tr. 26). The Court fails to discern how this observation undermines Dr. Sajja's credibility. The ALJ also noted that Dr. Sajja's opinions were contrary to the opinions offered by other care providers. (Tr. 26). This observation is not particularly accurate, however, as the ALJ's conclusion is based upon the mischaracterization of the record. For example, the ALJ cites to Dr. Kitchen's opinions and observations. (Tr. 26). As noted above, however, Dr. Kitchen's opinions support Dr. Sajja's opinions. The ALJ also cited to Dr. Shaver's conclusions. (Tr. 26). Again, Dr. Shaver's observations, do not undermine Dr. Sajja's

17

opinions. (Tr. 769-74). In sum, the ALJ's decision to discount Dr. Sajja's opinions is not supported by substantial evidence.

## IV.         Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

The record fails to establish that Plaintiff is entitled to an award of benefits. There does not exist overwhelming evidence that Plaintiff is disabled. Moreover, while there exists evidence that Plaintiff is more limited than recognized by the ALJ, the record also contains evidence supporting the contrary conclusion. Simply put, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. For example, it is not clear whether Plaintiff's impairment and functioning can be appreciably improved through consistent pharmacological treatment. It is also not clear whether there exist objective tests and assessments that could provide better insight into Plaintiff's condition and ability to function going forward. Accordingly, the Commissioner's decision is reversed and this matter remanded for further factual findings.

**<u>CONCLUSION</u>**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.  A judgment consistent with this opinion will enter.


Date:  March 26, 2015                                    /s/ Ellen S. Carmody_____
                                                                     ELLEN S. CARMODY
                                                                     United States Magistrate Judge